THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
*v.* RALPH GRIECO, Appellant.

(Argued December 3, 1934; decided December 31, 1934.)

*Melvin F. Kinkley* for appellant. The court erred in holding the misdemeanors named in the indictment were the misdemeanors affecting the person or the property of the person killed or of another. (Penal Law, § 1050, subd. 1; Vehicle and Traffic Law, § 70, subd. 5; Cons. Laws, ch. 71.) On examination and drawing of the jury, the defendant's constitutional rights were violated. (Code Crim. Proc. § 385; *People* v. *McQuade*, 110 N. Y. 284.)

*Howard B. Donaldson, District Attorney*, for respondent. Reckless driving is a misdemeanor specified in section 1050 of the Penal Law. (Cons. Laws, ch. 71, § 58; *People* v. *Darragh*, 141 App. Div. 408; 203 N. Y. 527; *People* v. *Grogan*, 260 N. Y. 138.) No error was committed in permitting the People to challenge peremptorily a previously accepted juror. (Code Crim. Proc. § 371; *People* v. *Hughes*, 137 N. Y. 29; *People* v. *Elliott*, 66 App. Div. 179; 172 N. Y. 146.)

HUBBS, J. Defendant has been convicted of the crime of manslaughter in the first degree for causing the death of Grace Burgess while in an intoxicated condition and engaged in driving an automobile in a reckless manner. In so far as is material here, the indictment charged the defendant with the crime of manslaughter in the first degree in two counts:

1. While " engaged in committing a misdemeanor affecting the person of one Grace Burgess," the deceased, while violating subdivision 5, section 70 of the Vehicle and Traffic Law of the State (Cons. Laws, ch. 71).

2. While " in the act of committing a misdemeanor, to wit, reckless driving in violation of section 58 of the Vehicle and Traffic Law of the state."

The learned trial judge, in charging the jury under the first count of the indictment said: " I say to you, as a matter of law, that subdivision 5 of section 70 of the Vehicle and Traffic Law is, under section 1050 of the Penal Law, a misdemeanor affecting the person or property either of the person killed or of another."

The jury was instructed under the second count of the indictment that the defendant " was in the commission of a misdemeanor in that he was at that time violating section 58 of the Vehicle and Traffic Law * * * that is a misdemeanor contemplated in section 1050 of the Penal Law as affecting the person or the property of the person killed, or of another."

Counsel for defendant duly excepted to those parts of the charge. The jury found the defendant guilty of manslaughter in the first degree and being a second offender, he was sentenced to a term of twenty years' imprisonment.

It is not contended that the defendant intentionally ran down the deceased or that he saw her before the moment of contact. The question presented is whether a conviction of manslaughter in the first degree was legal under the indictment and the facts established. That is, was the misdemeanor charged and proved a misdemeanor of the class specified in subdivision 1 of section 1050 of the Penal Law, which reads: " Manslaughter in first degree. Such homicide is manslaughter in the first degree, when committed without a design to effect death: 1. By a person engaged in committing, or attempting to commit, a misdemeanor, affecting the person or property, either of the person killed, or of another."

Was the violation of the provisions of the Vehicle and Traffic Law charged a misdemeanor " affecting the person or property, either of the person killed, or of another? " If it was not, the charge was erroneous and the conviction of the defendant of manslaughter in the first degree was illegal although he might have been convicted of manslaughter in the second degree. Subdivision 5 of section 70 of the Vehicle and Traffic Law provides that " Whoever operates a motor vehicle or motorcycle while in an intoxicated condition shall be guilty of a misdemeanor." Section 58 of the Vehicle and Traffic Law makes reckless driving, as therein defined, a misdemeanor. The jury has found that the defendant while committing the misdemeanor charged in the indictment caused the death of decedent. The acts charged were that the defendant drove his automobile in a reckless manner while intoxicated. True it is that he was engaging in an act which constituted a misdemeanor. How can it be said, however, that the unlawful act in which he was engaging was "A misdemeanor, affecting the person or property, either of the person killed, or of another? " Defendant did not intentionally hit the deceased. He did not see her until the very instant of contact. The degree of the crime cannot be fixed " by analyzing the constituent acts which, in combination, make up the transaction, and viewing them distributively. It is determined by the quality and purpose of the transaction as a whole." (*Messersmith* v. *American Fidelity Co.*, 232 N. Y. 161, 166.)

A moment before the collision the defendant's conduct constituted a crime, a misdemeanor against society, against law and order and against the People of the State. The commission of the misdemeanor in which he was engaged was not one affecting the person or property of deceased or of another. He had not seen the deceased and did not know that she was present. The fact that his automobile struck her could not instantly change his conduct so as to make it an act affecting the person of

the deceased and thereby make him liable for the crime of manslaughter in the first degree. Manifestly, the Legislature never intended that the statutes should have that effect. The words " affecting the person or property, either of the person killed, or of another," used in section 1050, subdivision 1, must be given a reasonable meaning, one in harmony with the other provisions of the Penal Law. The Vehicle and Traffic Law makes many offenses misdemeanors. If this conviction should be sustained, every driver of an automobile, who, while committing one of the offenses defined as a misdemeanor in that act, accidentally causes the death of a person will be guilty of the crime of manslaughter in the first degree no matter how thoughtless or unintentional the act. The intent to commit the minor offense would make the driver guilty of the more serious offense of manslaughter in the first degree without regard to how innocent of an intent to commit that grave offense the driver might be.

A driver who violates a provision of the Vehicle and Traffic Law which makes certain conduct a misdemeanor should be punished for such misdemeanor as provided in that act.

He may also be convicted of an assault in the third degree, if, while driving in a culpable, negligent manner, he causes another to suffer bodily injury. (Penal Law, § 244, subd. 2.)

If the conduct constituting such a misdemeanor has in addition the elements which constitute culpable negligence and he causes the death of another, then section 1052, subdivision 3, of the Penal Law is applicable and the driver may be convicted of manslaughter in the second degree.

If he causes the death of another while engaged in the commission of a misdemeanor " affecting the person or property, either of the person killed, or of another," he is guilty of manslaughter in the first degree. (Penal Law, § 1050, subd. 1.)

To summarize, if a person drives an automobile in a reckless manner or while intoxicated, he is guilty of a misdemeanor under the Vehicle and Traffic Law. Under the same circumstances, if he injures another while driving in a culpable, negligent manner, he is guilty of assault in the third degree. If he causes the death of another while driving in a culpable, negligent manner, he is guilty of manslaughter in the second degree. A conviction may be had for manslaughter in the first degree if, at the time, the driver is engaged in committing or attempting to commit a misdemeanor affecting some particular person or property as distinguished from a misdemeanor affecting society in general.

As the conduct of the defendant did not constitute a misdemeanor affecting the person or property of Grace Burgess, deceased, or of another, he could not be legally convicted of manslaughter in the first degree because of the fact that he was at the time engaged in the commission of a misdemeanor charged in the indictment.

The conclusion which we have reached is sustained by analogy in the decisions of this court in cases where defendants were convicted of felony murder under subdivision 2 of section 1044 of the Penal Law, where death resulted from the commission of an assault. While the analogy from those decisions may not be complete, the implication is clear. In those cases it was contended that one who commits an assault in the second degree is engaged in the commission of a felony and if, while so engaged, the assault results in the death of the person assaulted, the assailant is guilty of a felony murder although the other elements constituting first degree murder are not established. This court has consistently decided to the contrary. In the case of *People* v. *Hüter* (184 N. Y. 237, 244) Judge HAIGHT said: " It is apparent, therefore, that the *gist* of the offense is the assault and when it is by violence inflicting an injury to the person so assaulted, resulting in death, the act becomes a con-

stituent part of the homicide and is merged in the charge therefor." (Cf. *People* v. *Spohr*, 206 N. Y. 516; *People* v. *Wagner*, 245 N. Y. 143.)

In the case at bar the indictment is for manslaughter in the first degree while engaged in the commission of a misdemeanor. We have reached the conclusion that the misdemeanor charged was merged in the charge of man-slaughter in the first degree and, therefore, that there could not legally be a conviction of manslaughter in the first degree because of the fact that the defendant was at the time engaged in the commission of the misdemeanor charged in the indictment.

In the case of *People* v. *Darragh* (141 App. Div. 408; affd., 203 N. Y. 527, without opinion) a contrary conclusion was reached by a majority of the members of the Appellate Division. When the case reached this court, the question discussed in the opinion in the Appellate Division was not open as the record did not disclose an exception which raised that question at the trial, and this court was without jurisdiction to review the question. (*People* v. *Huson*, 187 N. Y. 97.)

Error was also committed in the selection of the jury. Jurors were called to the box. The District Attorney examined them and excused certain ones. He then stated that the twelve jurors then in the box were acceptable to the People. The attorney for the defendant then examined the twelve jurors accepted by the People and excused two. Two other jurors were drawn to take the place of the two excused by defendant's counsel. The District Attorney examined them and excused both, also a juror who had previously been examined and accepted by the People and the defendant's counsel. The defendant's counsel objected but the objection was overruled and the People were permitted to excuse the juror peremptorily. The defendant's counsel duly excepted. The ruling was in violation of the provisions of section 385 of the Code of Criminal Pro-

cedure and the decision of this court in the case of *People* v. *McQuade* (110 N. Y. 284).

The judgment should be reversed and a new trial ordered.

O'BRIEN, J. (dissenting). I vote for affirmance. Defendant's conviction of the crime of manslaughter in the first degree for the death of Grace Burgess is based wholly on the second count of the indictment. It charges that he killed her while he was violating a municipal ordinance which had established traffic signal lights and that in violation of this ordinance he operated his automobile onto and across a safety zone which she was then crossing. The same count charges that the homicide occurred while defendant was also in the act of committing the misdemeanor of reckless driving in violation of section 58 of the Vehicle and Traffic Law.

The evidence proves that, while he was intoxicated, defendant drove past the red light through the safety zone, struck Mrs. Briant, struck and killed Mrs. Burgess, and, within two or three seconds thereafter, collided with another car, the property of a third person. His conduct was in contravention of the ordinance and it constitutes the misdemeanor defined by section 58 of the Vehicle and Traffic Law. By the manner in which he drove his car he unreasonably interfered with the free and proper use of the public highway and he unreasonably endangered users of the public highway (*People* v. *Grogan*, 260 N. Y. 138, 149), including the three individuals specifically concerned with his conduct.

If defendant was engaged at the time of the homicide in committing a misdemeanor " affecting the person or property, either of the person killed, or of another " (Penal Law, § 1050, subd. 1), he is guilty of manslaughter in the first degree. The fact that defendant did not intentionally run down the deceased does not appear to have any relevancy to the case. The gravamen of the mis-

demeanor is failure to exercise the care of the reasonably prudent man. (*People* v. *Grogan, supra.*) If he failed to see his victim when he should have seen her, he has committed this misdemeanor. The question is, therefore, whether the commission of this misdemeanor was such a one as " affected " the person or property either of Mrs. Burgess or of another. In ascertaining the correct answer to this question, courts are admonished that our Penal Law is not to be strictly construed but that it must be construed according to the fair import of its terms to promote justice and effect the objects of the law. (Penal Law, § 21.) We are warned against indulging in elaborate subtleties and are obliged to interpret language according to its ordinarily accepted meaning. Reasoning should not be unduly refined; words must not be tortured. To " affect " is defined by Webster as meaning " to produce an effect on," and, as judicially defined, it signifies " to act upon, to produce an effect or change upon " (*Canniff* v. *Mayor,* 4 E. D. Smith, 430, 439); " acting injuriously upon persons and things " (*Ryan* v. *Carter,* 93 U. S. 78, 84); " concern " (*United States* v. *Ortga,* 11 Wheat. 467, 468). Not only did defendant's commission of the misdemeanor as defined by section 58 of the Vehicle and Traffic Law offend society in general but it affected the person of Mrs. Burgess and simultaneously affected the person of Mrs. Briant and almost instantaneously affected the property of the owner of the car with which defendant collided. Of course the commission of a misdemeanor which is in no way related to the killing cannot in reason be deemed such a misdemeanor as section 1050 contemplates. For illustration, one who is using boisterous and profane language in public against a particular individual and thereby is tending to cause a breach of the peace, but who, at the same time is driving carefully and conforming in every respect with the laws relating to traffic, unfortunately collides with and kills another person

negligently proceeding directly into his path, would be engaged in the commission of a misdemeanor but it would not be such a misdemeanor as affects persons or property in the sense intended by the statute. Defendant's act of misdemeanor was the direct cause of the killing. If he had not recklessly driven past the signal into the safety zone while his victims were rightfully there, the homicide would not have occurred. That the misdemeanor to which section 1050 refers need not be separate from the act of killing seems to be the more reasonable view. (*People* v. *Stacy*, 119 App. Div. 743, 748; *People* v. *Darragh*, 141 App. Div. 408, 418.)

Without showing in what manner, if any, his substantial right was violated on the trial, defendant raises a second point, relying upon sections 385 and 386 of the Code of Criminal Procedure and *People* v. *McQuade* (110 N. Y. 284), that reversible error was committed in allowing the People peremptorily to challenge a juror and in excusing that juror after he had been accepted but before he had been sworn. The record in the *McQuade* case, decided in the year 1888, differs from the record before us. The opinion in that case makes no reference to the provisions of section 371 of the Code of Criminal Procedure. The facts apparently did not warrant their application. Here they seem to control. Section 371 provides: " A challenge must be taken when the juror appears, and before he is sworn; but the court may, in its discretion, for good cause, set aside a juror at any time before evidence is given in the action." In *People* v. *Hughes* (137 N. Y. 29, 36) this court, without mentioning the decision in the *McQuade* case, thus defined this section: " The obvious meaning of section 371 is that a challenge for ' good cause,' which is required to be taken before the juror is sworn, may nevertheless be taken thereafter — and before evidence is given, in the discretion of the court." After a juror had been sworn in the *Hughes* case, the District Attorney stated

that he desired to interpose a peremptory challenge, the reason being that matters had come to his knowledge since the juror was sworn leàding him to believe that the juror was not satisfactory. We held on that record that the trial court did not abuse discretion when it permitted a peremptory challenge upon the assurance of the public officer empowered by the law to represent the People in the prosecution of criminals. In the case at bar, the record shows that, during the examination of jurors, a short recess was taken and that, after the court reconvened, a juror previously accepted but not sworn was peremptorily challenged by the People. What occurred between court and counsel during the recess is not disclosed by the record. There was no request by defendant to cause a record to be made and we cannot assume that the court arbitrarily set aside the juror without good cause. Defendant's counsel contented himself with an objection to the juror being excused and an exception based solely on the ground that the juror had previously been accepted by the People. The objection was not directed to any alleged abuse of discretion but rested upon the assertion of a lack of power to excuse. The court certainly was empowered to excuse in the exercise of discretion (*People* v. *Hughes, supra; People* v. *Elliot,* 66 App. Div. 179; affd., 172 N. Y. 146) and no facts appear tending to show an abuse.

POUND, Ch.J., CRANE, LEHMAN, CROUCH and LOUGHRAN, JJ., concur with HUBBS, J.; O'BRIEN, J., dissents in opinion.

Judgment reversed, etc.