Ormand N. Gale, J.
The defendants, Stephen Carnrite and Donald R. Cassidy are charged by Indictment No. 67-412 of the crime of manslaughter in the first degree committed as follows: ‘ ‘ The said Stephen oarnrite, donald r. cassidy on or about the 2nd day of July nineteen hundred and sixty-seven at the Town *1088 of Lafayette in this county while engaged in committing a misdemeanor, to wit: in violation of Section 1894-a(2) of the Penal Law of the State of New York, and without a design to effect death, negligently threw a dangerous instrumentality, to wit: a firecracker in the vicinity of Kenneth E. Dulasky and thereby inflicted divers wounds upon the said Kenneth E. Dulasky, said act not being justifiable or excusable, and shortly thereafter the said Kenneth E. Dulasky died, said wounds having been a contributing factor from which death resulted.
SECOND COUNT
and the grand jury aeoresaid, by this indictment, further accuse the said defendants of the crime of violation of section 1894-a(2) of the penal law of the state of new york (a misdemeanor), committed as follows: The defendants, on or about the 2nd day of July, nineteen hundred and sixty-seven, at the Town of Lafayette, in this county aforesaid, had in their possession a quantity of firecrackers which they caused to explode, without a written permit as required by law.”
The defendants, above named, have moved for an order to inspect the Grand Jury minutes and for an order dismissing the indictment and initially for an order allowing demurrers and dismissing the indictment. Turning our attention to the question of the demurrer, we feel the language of the court in People v. Diamond (95 Misc. 114, 116) is apropos: “It is fundamental that the defendants should be apprised by the indictment of the charge against them; that the indictment must concisely state both the crime and the acts constituting it. The obvious object is that the charge should be set forth with such certainty and sufficiency as to enable the defendant to prepare for trial, and to protect them against a second prosecution for the same offense. Otherwise, a demurrer should be upheld.” We feel that the indictment sufficiently apprises the defendants of the crimes charged, and the demurrer in each case is disallowed.
The motion to inspect the Grand Jury minutes and for an order dismissing the indictment pursuant to CPLR 3120; directing the Upstate Medical Center of Syracuse, New York, through its administrator, custodian of records, to produce from its hospital records, complete copies of the medical record of the decedent, Kenneth E. Dulasky, was partially disposed of by stipulation wherein such stipulation formed the basis of an order of this court entered on January 11, 1968, directing that the copies of the medical records of the decedent be given to defendant’s attorney, William Francis Lynn, but further ordered that this order of discovery be conditioned upon discovery by the prosecu *1089 lion of any similar evidence relating to medical records of the decedent in the possession and knowledge of the defendant’s attorney, excluding reports in the nature of expert testimony.
As indicated by the indictment both defendants have been indicted for the crime of misdemeanor-manslaughter in the first degree and the crime of exploding firecrackers in violation of subdivision 2 of section 1894-a of the Penal Law (the misdemeanor).
This court has read the minutes of the Grand Jury. There is no question but what the minutes of the Grand Jury sustain the misdemeanor of violation of subdivision 2 of section 1894-a.
The report, recommendations and studies of the Law Revision Commission (1937 Report of N. Y. Law Rev. Comm., p. 754), bring into sharp focus the problem presented in this case, in the following language: “ The manner in which section 1050 (1) is phrased has contributed to the complications which have attended the attempts to interpret it. ’ ’
The case most seriously relied upon by the movants is the case of People v. Grieco (266 N. Y. 48). However, a careful reading of this case seems to distinguish it from the case at bar by reason of the following quotations (p. 50): “It is not contended that the defendant intentionally ran down the deceased or that he saw her before the moment of contact.” (Italics added.) Further, two quotations, both from page 51 of the opinion: “ He did not see her until the very instant of contact. * * * He had not seen the deceased and did not know that she was present. ’ ’
The question is whether the commission of this misdemeanor was such a one as ‘‘ affected ’ ’ the person of the victim. This is a question of fact to be determined by the jury and not by this court as a matter of law. This was accurately stated by the First Department in the case of People v. Darragh (141 App. Div. 408, 418): “ So that if the question were properly before us it would be clear, we think, that the conviction under section 1050 of the Penal Law was justified because the jury by their verdict have found that the appellant was a person engaged in committing a misdemeanor affecting the person or property of the person killed or of another. ’ ’
The defendant Cassidy argued before this court that the misdemeanor in the Grieco case was insufficient because it was ‘1 a misdemeanor against society.” This may well be so. However, a careful reading of the Grand Jury minutes discloses that there was only one person swimming in the water of the Jamesville Reservoir at the time of this unfortunate death and that person was the decedent.
*1090 We are not impressed with the distinction urged upon the court as to whether or not the underlying misdemeanor was malum in se or malum prohibitum. In People v. Diamond (95 Misc. 114, 120, supra) the court stated as follows: “ Nor do I see that under the law of this state the point that this was a fault of omission rather than of commission can prevail. * * * It seems to me that under our statute there are no exceptions; but that any one would be guilty of manslaughter who, while engaged in the commission of a misdemeanor, brings about the death of another irrespective of the fact that it was malum prohibitum or malum in se. ’ ’
The bulk of the cases falling under this particular section of the Penal Law have been public nuisance cases where a building ordinance has been violated and where such violations have subsequently resulted in the death of persons confined therein. The statute is quite clear that the misdemeanor must only be such a one as “ affects ” the person of the victim. The court can take judicial notice, however, of the fact that the explosion of firecrackers have maimed, injured and killed individuals. The report of Arthur E. Hirsch, Head, Personnel Protection Branch, Naval Ship Research And Development Center, clearly points out the potentiality for personal injury of the so-called “ Silver Salutes ” that were allegedly used by the defendants on the day the crime was alleged to have been committed. We agree with the following language from the Supreme Judicial Court of Maine in State v. Budge (126 Me. 223, 225-226): “ The burden is not on a respondent to prove the homicide occurred by misadventure, but on the state to show it was either due to a reckless disregard of the safety of others, or that, if it resulted while in the performance of an unlawful act and involuntary, the unlawful act was malum in se, or, if malum prohibitum, that it was at least the proximate cause of the homicide. ’ ’
While the stipulation entered into gave the defendants a considerable portion of the People’s proof, there is one further order of discovery that has been requested generally, that I think the defendants are entitled to. There is no question that both defendants were throwing these firecrackers into Jamesville Reservoir and there is no question that the jury can find as a question of fact that they were the so-called “ Silver Salutes ”. However, this court feels the opinions of expert witnesses, where they will in no way prejudice anyone, should be made available to all parties involved. This court has already authorized assigned counsel to hire experts and has specifically directed that the “findings of such experts be made available to the codefendant,
*1091 At the annual meeting of the National Conference of State Trial Judges, held at Honolulu, Hawaii on August 1, 2, 3, 1967, a panel discussion was held on “ The Expert Witness and the Court On page eleven, one of the panel made the following comment: ‘ ‘ Furnishing a copy of the expert’s report to the opponent and permitting the opponent to take the expert’s deposition concerning it does away with surprise, permits the opponent more adequately to prepare his cross-examination, probably will result in a better-prepared case on both sides and a more clearly formulated issue for the jury and a shorter trial when the matter finally comes to trial
Most of the contentions raised by Mr. Lynn’s excellent analysis of the problems in this case are questions of fact which must be decided by the jurors and not by this court at this juncture. However, there is a substantial question of fact as to whether a firecracker did come close enough to the decedent to cause the injury which may have been the proximate cause of death. The Grand Jury minutes disclose that a scuba diver was brought to the scene by the Sheriff’s department and directed to go down into the water at approximately the same position where the body was found. The scuba diver looked around in the water and he did retrieve a silver-colored label. This label was identified before the Grand Jury as being ‘1 pressed cardboard ’ ’.
The court hereby directs that this piece of evidence be turned over to the counsel for both defendants for determination as to whether or not their expert will agree or disagree that this was any part of a “ Silver Salute ”.
To dispose of some of the remaining questions, this court holds that the misdemeanor of possessing and/or firing and setting off a firecracker is separate and distinct from the homicide, and there is no such merger as is commonly found in the case of assault followed by death. The absence of such a merger in the case at bar, therefore, distinguishes it from People v. Lasar (271 N. Y. 27).
There is no question but that the autopsy report, with which defense counsel is familiar, shows severe lacerations and cerebral fractures. Whether these were caused by the Silver Salute is a question of fact for the jury to determine. Certainly Mr. Hirsch’s report shows their dangerous potentiality. Defense counsel has interviewed many of the key witnesses who testified before the Grand Jury and will be in a position to cross-examine any medical expert as to the proximate cause of death.
As the stories of the various witnesses unfold before the jury it will be a question of fact as to whether the defendant, Donald R. Cassidy, is a principal with Carnrite, or Stephen Carnrite is *1092 a principal with Cassidy. Until the witnesses have been examined and cross-examined, it cannot be said with any clarity. But certainly each defendant has a right to raise this question at the conclusion of the People’s case if he is satisfied that the evidence does not show that the acts of his client “ affect [ed] the person or property, either of the person killed”. (People v. Nelson, 309 N. Y. 231, 234.)
For the reasons given the demurrer is disallowed and the motion to dismiss the indictment is denied.